MARY E. CALKINS, as Administratrix of the Estate of JAMES H. CALKINS, Deceased, Respondent, *v.* JAMES M. HART, Appellant.

Riparian rights — rule as between adjoining owners on non-navigable streams and inland lakes — each owner takes title to center of stream in proportion to his line in front of his upland between straight lines drawn at right angles between his side lines to the center of the stream.

1. The common-law rule as it obtains in this state is that, as between adjoining owners on non-navigable streams and rivers and inland lakes, each owner takes title *ad medium filium aquæ*, in proportion to his line on the margin in front of his upland according to straight lines drawn at right angles between the side lines of his land on the shore and the center of the stream.

2. Where a lake is oval in form with its length double its width, and the shore line practically unbroken by coves or bays, the lot lines bounding the same at right angles to the stream, it is legally a non-navigable stream to which this rule applies.

*Calkins* v. *Hart*, 164 App. Div. 909, affirmed.

(Argued June 9, 1916; decided October 3, 1916.)

10

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 14, 1914, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Louis C. Rowe* and *Udelle Bartlett* for appellant. All lines should be drawn to the center point of the lake. (*Gouverneur* v. *Nat. Ice Co.*, 134 N. Y. 356; *Hardin* v. *Jordan*, 140 U. S. 371; *Hansen* v. *Rice*, 88 Minn. 273; *Everson* v. *City of Wascea*, 44 Minn. 247; *Schell* v. *Mattison*, 31 Minn. 38; *Security Land Express Co.* v. *Burns*, 87 Minn. 97; *Rhodes* v. *Cissel*, 100 S. W. Rep. 758; *Schiefert* v. *Briegel*, 90 Minn. 125; *P. & L. A. Iron Co.* v. *L. S. Iron Co.*, 118 Mich. 109.)

*L. W. Baker* for respondent. The plaintiff is the owner in fee of the land under the water to the center of the lake. (*Wilcox* v. *Bread*, 92 Hun, 9; 157 N. Y. 713; *Fulton L., H. & P. Co.* v. *State of New York*, 200 N.Y. 400; *Mott* v. *Mott*, 68 N. Y. 246; *Smith* v. *Bartlett*, 180 N. Y. 360; *Gouverneur* v. *National Ice Co.*, 134 N. Y. 355; *Smith* v. *City of Rochester*, 92 N. Y. 463.)

Hogan, J. Lot number thirty-three in the township of Hannibal, Oswego county, as distinguished on a map of the military township contained six hundred acres. Lying in the westerly side of said lot number thirty-three and extending a short distance westerly outside the west line of said lot is a small body of water, oval in shape, without inlet or outlet, about two-thirds of a mile in length and half as broad. About five-sixths of the water is upon lot number thirty-three. In 1850, one Loomis, a surveyor, made a map of lot number thirty-three and filed the same in Oswego county clerk's office. The numbers of the subdivisions appearing on an earlier

map were changed upon the Loomis map, and convey-
ances after 1850 were made with reference to the Loomis
map. The water of the "Spring or Mud Lake," so
called, is described as pure and quantities of moss and
ice are annually taken from the same for commercial
purposes.

The plaintiff by deed dated December 28th, 1906,
obtained title to ninety-four acres of land in lot
number thirty-three, bounded on the north by lands
of Vorse and Barnes and the north line of lot num-
ber thirty-three, on the east by the highway; on the
south by the land of Baker (now claimed by defendant)
and on the west by the west line of great lot number
thirty-three according to the map made by Loomis. The
land thus conveyed covered the land surrounding the
northerly end of the lake in lot number thirty-three and
about three-quarters the length of the lake on the east-
erly side thereof. A small portion of the lake, at the
southerly end, extended into the lot south of plaintiff's
land claimed by defendant, the northerly line of said lot
running east about twenty-five chains from the shore of
the lake to the highway. This action was in trespass by
reason, as alleged by plaintiff, of an unlawful entry by
defendant upon the lake in question and cutting and
removal of ice from that portion of the lake directly west
of plaintiff's land and north of the boundary of the land
claimed by defendant. The trial justice submitted the
case to the jury and instructed them that plaintiff owned
the land east of the center of the lake and north of his
south line extended, and if the jury found that defendant
cut any ice in that portion of the lake he was a trespasser.
The jury found a verdict in favor of plaintiff. The trial
justice held that plaintiff could not under the proofs
offered establish title to all lands under water to the west-
erly side of lot number thirty-three, but had established
title to the thread of the stream. Defendant claimed the
right to establish an interest in the lake and the land

under water to the geographical center of the body of water and asserted that each owner on the lake was entitled to a triangular parcel of land under water with its apex at such center and the base on the shore line of his property by reason of the oval shape of the lake. Evidence was adduced by defendant to locate such geographical center. The trial justice held that each abutting owner was entitled to the land under water to a line drawn through the longest diameter of the lake and in that conclusion, affirmed by the Appellate Division, we concur. Though the body of water in question is oval in shape an examination of the Loomis map discloses the shore line to be quite regular. By extending the boundary lines of the land of the plaintiff on the south side into the lake to the thread of the stream, and then following northerly the thread of the stream to the head of the lake would result in an allotment to plaintiff of only such portion of the lake as the shore line of his premises discloses would be fair and proportionate, while the divisions by a geographical center, as asserted by defendant, would give to him an unfair proportion of the lake to the detriment of plaintiff and other riparian owners.

In this state and in most of other jurisdictions where the common-law rule obtains, the rule has been established that as between adjoining owners on non-navigable streams and rivers, each owner takes title *ad medium filium aquæ*, in proportion to his line on the margin in front of his upland according to straight lines drawn at right angles between the side lines of his land on the shore and the center line of the stream. The decisions of our courts relating to the ownership of land under water in inland lakes are founded upon the principles of law applicable to rivers. (*Smith* v. *City of Rochester*, 92 N. Y. 463; *Gouverneur* v. *National Ice Co.*, 134 N. Y. 355; *Ledyard* v. *Ten Eyck*, 36 Barb. 102; *Deuterman* v. *Gainsborg*, 9 App. Div. 151.) As pointed out in the very illuminating opinion written by the trial justice in this

case (64 Misc. Rep. 149), the question has arisen in some jurisdictions when the body of water was so irregular that a division of rights therein upon the rule prevailing in this state would seem inequitable, but the facts in this case are clearly distinguishable from the decisions made where such difficult situations were involved. In this state may be found many inland lakes of varying size and shape. It would be well nigh impossible to lay down a general rule applicable alike to all of them, as each case depends upon its own peculiar circumstances and facts. The case at bar is not out of the ordinary. The body of water under consideration is legally a non-navigable stream, its length is double the width of the same, the shore line practically unbroken by coves or bays, the lot lines bounding the same at right angles with the stream. A line drawn through the center of the stream north and south equitably and proportionately gives to each riparian owner an interest to that line in the water or the land thereunder without undue advantage over his neighbor. Should the present shore line at some future date be extended uniformly into the lake by alluvion, even midway to the thread of the stream, as it is located at the present time, the allotment made by the trial justice in this case would be justified. (*People ex rel. Cornwall* v. *Woodruff*, 30 App. Div. 43; affirmed on opinion below, 157 N. Y. 709.)

The judgment should be affirmed, with costs.

Chase, Collin and Cuddeback, JJ., concur; Willard Bartlett, Ch. J., and Cardozo, J., dissent.

Judgment affirmed.