Carrol S. Walsh, J.
Plaintiff seeks judgment declaring it to be the owner in fee simple absolute, free and clear from any claim of the defendants and each of them, in certain premises *903 situate in the Town of Horicon, Warren County, New York, bordering on Brant Lake, part of Lot No. 176 of the Brant Lake Tract, particularly as to that part of the premises consisting of the beach area lying between the State highway, which intersects the premises, and the lake, and lands lying under the waters of Brant Lake to the extent established by the proof. Defendants Barton deny the title and rights of plaintiff in and to the controverted area, the other defendants denying sufficient information upon which to form a belief as to plaintiff’s asserted title and rights. The defendants, other than the Bartons, seek to have the location of an easement to the beach, granted them by plaintiff’s predecessor, determined.
In 1827, the State of New York granted Letters Patent to one Matthew Whitlock, conveying to him Lot No. 176 of the Brant Lake Tract, containing 160 acres, of which about 41 lay under the waters of Brant Lake. No reservations of the waters of the lake or the land within said lot under the waters appears. After mesne conveyances the said lot was conveyed to one Stephen Starbuck in 1840, and who by deed dated July 15, 1854 conveyed 42 acres out of the said lot to one Joseph F. Smith, bounding the same upon the lake at low-water mark. By deed dated December 5, 1863, Smith’s widow and the executor of his estate conveyed to Abraham Pratt a parcel of about 23 acres out of the 42 owned by Smith, but bounding this parcel upon the lake at high-water mark. Eventually one Joel Barton and Anna Barton, his wife, acquired title to the 23-acre parcel by means of several deeds over the years from the heirs of Pratt; and in 1926, subsequent to the death of Joel Barton, the said Anna Barton conveyed the premises to one Carpenter and one Kiley, the description in the latter deed again bounding the parcel upon the lake at low-water mark. By mesne conveyances, this same parcel was ultimately conveyed to plaintiff herein, the description as to the boundary upon the lake continuing as low-water mark.
The evidence discloses that Kiley and Carpenter constructed a gas station on that part of the premises south of the State highway, leased the same for at least three years prior to 1932 ■to one Cecil Oviitt, who also sold ice cream and soda at the gas station; that in 1932 people by the name of Day began operating the gas station, conducted a store therein, added a restaurant and a bar on that part of the premises south of the highway, placed picnic tables on the beach north of the highway, built and maintained a dock out into the waters of the lake, utilized and rented space in a bath house which had been constructed on the beach and in which bathers changed their clothes after *904 paying the required fee to Day, maintained and rented boats to anyone wishing to hire them, built cabins on the premises and rented them, rented space for tenters, granting to the campers privileges of using the beach and the waters of the lake, cut ice from the lake in the winter, and designated areas for bathing and for launching of boats. The Days purchased the premises in January, 1937, continued the same operations and use of the premises until the sale of the same by them to Gilbert Schlierer and his brother in May, 1946. Gilbert Schlierer became sole owner in December, 1949. The brothers Schlierer, and then Gilbert Schlierer made use of the premises in the same manner as the Days, except that the evidence discloses that Gilbert Schlierer added sand to the beach, and conveyed lots out of the parcel to the defendants named herein other than the Bartons, and gave to each lot owner an easement over an area of the beach 100 feet in width. Gilbert Schlierer conveyed the premises to plaintiff by deed dated September 11, 1959, excepting for the lots conveyed, but subject to the easement granted the said defendants on the beach. Plaintiff has conducted no business on the premises, but has used them, particularly the beach area and waters adjoining, in connection with summer camps operated by plaintiff at other areas around Brant Lake.
Obviously, Anna Barton acquired no record title to the land, water and land under the water of Brant Lake, beyond high-water mark. The Letters Patent in 1827 gave Whitlock title to the waters of Brant Lake and land lying thereunder within the boundaries of that which he acquired, namely Lot No. 176 of the Brant Lake Tract. He could use that area of water for bathing, boating and fishing. The same right, title and privilege was acquired by Starbuck. However, the deed to Joseph Smith contained a description which began on the lake at low-water mark and ran along the lake at low-water mark, but aside from this contained no restrictive or qualifying words which can be construed as excepting or reserving the waters of the lake or the use thereof. Therefore, Joseph F. Smith acquired title to the center of the lake in proportion to his line in front of his upland between straight lines drawn at right angles between his side lines to such center. (Calkins v. Hart 219 N. Y. 145; Hammel v. Camp Ranger, 275 App. Div. 23, affd. 300 N. Y. 602; Waters of White Lake v. Fricke, 282 App. Div. 333.) A boundary of low-water mark is one that touches water, and is not placed on dry land, for it lies, along and is in contact with a body of water except when entirely covered by the water of the lake or pond, and is ever marked by the presence of water, for no space can ever intervene between the lake and the boundary. (Hammel *905 v. Camp Ranger, supra; see, also, Gouverneur v. National Ice Co., 134 N. Y. 355.) A description using the words “ low water mark ’ ’, in the absence of an express reservation, carries title to the center of the lake or pond and is consistent with the rule followed at common law that a conveyance bounded by a small inland lake or pond carries title to the center or the thread of the current unless there is expression to the contrary. (Hammel v. Camp Ranger, supra; Hardin v. Jordan, 140 U. S. 371.) No express reservation of the waters or land thereunder is found in the Starbuck to Smith deed.
Smith’s widow and executor conveyed only to high-water mark and Anna Barton only acquired title in said premises to high-water mark, which precluded title in and to any land beyond high-water mark, and rights to use the water for any purpose. (White v. Knickerbocker Ice Co., 254 N. Y. 152.) Thus, plaintiff and its predecessors in title must establish title by adverse possession, and I hold that they did. Section 511 of the Real Property Actions and Proceedings Law provides in substance that where an occupant or those under whom he claims entered possession of the premises under claim of title, exclusive of any other right, founding the claim upon a written instrument as being a conveyance of the premises in question, with continuous possession and occupation of the premises included in the instrument or some part thereof for 10 years, under the same claim, the premises so included are deemed held adversely. Section 512 of said law provides in substance that to constitute adverse possession by one claiming title founded on a written instrument, land is deemed possessed and occupied where it has been usually cultivated or improved and/or protected by a substanial enclosure.
The plaintiff and its predecessors in title, commencing with the 1926 deed from Arma Barton, assumed and were entitled to assume, that title to the center of Brant Lake was included in the conveyance, by the use of the words ‘ ‘ low water mark ’ ’ in the description. Such title gave them title to the beach, the water and lands thereunder, within the boundaries. Even though mistaken, that fact is immaterial, because it is not required that the deed be .sufficient to convey a valid title to sustain adverse possession founded on a written instrument. (Evans v. Lux, 121 Misc. 466; Miller v. Long Is. R. R. Co., 71 N. Y. 380, 384; Rampo Mfg. Co. v. Mapes, 216 N. Y. 362, 370.) All the essential elements of adverse possession are present, that is, possession has from the inception been hostile under claim of right, open, notorious, exclusive and continuous. No one asserted any claim of title or interfered with plaintiff and *906 its predecessors until 1964 when defendant Bernard Barton placed signs on the beach and interfered with plaintiff’s use thereof, which was too late. Plaintiff has established title by adverse possession for well over 15 years, that being the period I construe necessary in this case. Adverse possession which commenced before 1963 cannot take title in less than 15 years. (Civ. Prac. Act, § 34; CPLR 212, subd. [a]; 218, subd. [b] ; . Reiter v. Landon Homes, 56 Misc 2d 168.) That part of the premises claimed to have been held adversely is included within the description of the several applicable deeds and, therefore, plaintiff is entitled to “ tack on” its immediate predecessor’s occupation as well as the occupation and possession of his predecessors, distinguishing this case from Melbourne v. Kukla (237 App. Div. 834); Rogoff v. Vanderbuilt Sons Corp. (263 App. Div. 841); Van Roo v. Van Roo (268 App. Div. 170), and others, cited by defendants Barton. The undisputed title to, use of and improvements on that part of the premises south of the State highway also included use and possession of the portion north of the highway, because adverse possession under written claim of title, although there is only partial possession of the property, is equivalent to constructive possession of the whole. (Sackett v. O’Brien, 27 A D 2d 979, affd. 23 N Y 2d 883.) The fact that the premises were used and occupied primarily during the summer months is immaterial, because the use required by adverse possession statutes is in fact that for which the property was intended to be used, and the obvious purpose for which these premises were used was to cater to summer time activities. (Sackett v. O’Brien, 43 Misc 2d 476.) The fact that the general public made use of the beach and waters does not destroy plaintiff’s claim but, rather, strengthens it, because I find such use to have been encouraged by plaintiff’s predecessors, permissive in nature, and incidental to the use and occupation being made of the premises.
There being no express words to negate the presumption that title to the center of the lake was conveyed in all of the deeds since and including the 1926 Anna Barton deed (Stewart v. Turney, 237 N. Y. 117), title to the center of the lake being embraced in the description in all of such deeds (Hammel v. Camp Ranger, supra), plaintiff and his predecessors founding their claim of title upon a written instrument, using, occupying, maintaining and improving the premises both on the south and north sides of the highway, openly, notoriously, exclusively and continuously for the required prescribed period, title in fee simple absolute to the entire premises, including the beach, the waters and the land lying under the waters, to the center of *907 Brant Lake has been established by plaintiff and this court so holds.
Even were the boundary of “ low water mark ” to have been held as restrictive, plaintiff would have established its right to use the beach and the waters of the lake for boating, bathing and fishing by prescription. (Di Leo v. Pecksto Holding Corp., 304 N. Y. 505.) The manner in which plaintiff and its predecessors used, occupied, maintained, improved and controlled the beach and adjoining waters, as set forth above, adversely and hostile, openly, notoriously, exclusively, continuously, and founded on the assertion of right, for the required period, without being rebutted by defendants Barton, established the right to use the beach, and the waters of the lake by prescription based on adverse user. The facts and the manner of user in this case I find distinguishable from those in Tripp v. Richter (158 App. Div. 136); Commonwealth Water Co. v. Brunner (175 App. Div. 153), and Noble v. Echo Lake Tavern (142 Misc. 427).
While location or fixing of low-water mark in this case is superfluous, in view of the foregoing, had it been relevant or necessary the plaintiff would have failed to establish it by means of the testimony concerning the placing of a 10-inch plank on top of the dam at the outlet of Brant Lake in or about the year 1938. There being no proof as to whether or not the level of the lake has been affected over the years in any way by such causes as drought, floods, supply of water or volume of flow from feeder streams or springs, the purpose and effect of the plank and for what lengths of time the plank remained on top of the dam, it follows that there is no proof that the level of Brant Lake has been raised. The licensed surveyor’s testimony, in behalf of the plaintiff, was purely speculative and hypothetical and failed to take into consideration various factors material in nature which I deem essential to prove the actual location of the line.
Nor does the fact that chapter 445 of the Laws of 1899, declaring Spuyten Devil Greek, Brant Lake and Brant Lake Creek, tributaries of Schroon River, to be public highways for the purpose of floating logs, timber and lumber down those streams give anyone a greater right to the use of the waters of Brant Lake than one had prior to such declaration. As a public highway, anyone could use it for generally accepted highway purposes over water, such as floating logs and timber, but this does not include the right to boat, bathe and swim. Matter of Wilder (90 App. Div. 262), cited by plaintiff, holds that, however a public highway may come into existence, when once established there is no limitation of its use to certain individuals, and does *908 not hold, as contended by plaintiff, that there can be no limitation of its use.
Gilbert Schlierer, predecessor of plaintiff, conveyed lots out of the premises in question to the defendants Parisi, Philo, Yeates, Butler and Engel, each deed containing an easement identically described as follows: “ Together with the right of easement to use the beach and lands of the party of the first part northerly of the said State macadam highway for a distance of 100 feet from the point of intersection of the easterly boundary of said premises with the northerly boundary of said highway and bounded on the westerly side of said lands by a line perpendicular to the boundary of said highway and extended northerly to the low water mark of Brant Lake, being and intended to be Parcel No. 2, on a survey and map prepared by Robert 0. Sickles and Hugh J. Slattery, dated October 25, 1956, a copy of which survey and map is attached hereto. ’ ’ Prior to the litigation of the case before us, it was adjudicated in a separate and unrelated ease that the area included in Parcel No. 2 on the aforesaid map was not the property of Schlierer and was in fact owned by the adjoining landowner on the east. The defendant lot owners in this case were not parties in the other case. Thus the location of the easement given by Schlierer, subject to which plaintiff took title, must be determined and we must look to intent. Schlierer himself testified that it was his intention to protect the lot-owning defendants at such time as he sold the remaining premises, so that they could not be foreclosed or precluded from the use of the beach and waters. The very words of description of the easement contained in each deed are clear and express the intent of the grantor, the only ambiguity arising being the reference to Parcel No. 2 on the map referred to but only after the adjudication in the other case. I hold that it was Schlierer’s intent to grant the easement and over an area north of the highway for a distance of 100 feet westerly of his actual easterly boundary. The description in the document referred to in a deed will yield to words of description in the deed if it appears that the parties so intend. (Burke v. Henderson, 54 App. Div. 157.)
Accordingly, I find and adjudge as follows: that the plaintiff is seized of the premises described in the deed from Gilbert Schlierer, as grantor, to plaintiff as grantee, dated September 11, 1959, recorded in Warren County Clerk’s office in Book 390 of Deeds at page 611, except for that portion adjudicated by. this court by order dated December 14,1962 in a .separate action to belong to another, in fee simple absolute, and which premises include the beach having frontage along the water of about 245 *909 feet and the waters of Brant Lake and the land lying thereunder to the center of Brant Lake in proportion to the line in front of the upland between straight lines drawn at right angles between the side lines to the center of the lake, with full rights to boating, bathing and fishing in the waters of the lake within plaintiff’s boundaries that all and each of the defendants and every person claiming under any of them are barred from all claim or interest or estate whatsoever in said premises owned by the plaintiff, except that defendants Parisi, Philo, Teates, Butler and Engel, their heirs and assigns, are held and adjudicated to be the owners and holders of an easement in, to and over that portion of plaintiff’s premises described as follows : Commencing at the point of intersection of the northerly line of the State highway known as Boute 8 with the westerly boundary line of lands formerly of John B. Harrington and now owned by Bernard A. Barton and Geraldine, his wife, and running thence westerly along the northerly line of said State highway 100 feet, running thence northerly on a line perpendicular to the northerly line of said highway to the low-water mark of Brant Lake; running thence easterly along the low-water mark of Brant Lake to the intersection thereof with the westerly boundary line, or such line extended northerly, of lands formerly of Harrington, now of Barton; running thence southerly along the westerly boundary, or such boundary extended northerly, of said lands of Barton, to the point and place of beginning; that the defendant Bernard A. Barton remove all signs or posters heretofore erected on the beach or any other portion of the premises of plaintiff, that no. damages having been proven by plaintiff, no judgment for same in favor of plaintiff against the defendants or any of them is granted; that plaintiff recover against the defendants Bernard A. Barton and Geraldine Barton its costs and disbursements in this action; that plaintiff shall not recover costs and disbursements as against defendants Parisi, Philo, Testes, Butler and Engel, nor shall those said defendants recover costs and disbursements against plaintiff.